UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

WINDE FARINACCI,

    Plaintiff,

vs.

DIAZ FONTANEZ & ASSOCIATES LLC,
a foreign limited liability company, d/b/a
Open Gate Staffing, ARIEL DIAZ, and
ANDRIA FONTANEZ, individuals,

    Defendants.
_____/

**Jury Trial Demanded**

# COMPLAINT

The Plaintiff, Winde Farinacci, by her undersigned attorney, makes the following Complaint against the Defendants, Diaz Fontanez & Associates, LLC, Ariel Diaz, and Andria Fontanez:

1. This is an action to redress violations of the Fair Labor Standards Act of 1938 as amended ("FLSA"), 29 U.S.C. § 201 et seq., caused by the misclassification of an employee as an independent contractor and the resulting failure to pay the premium overtime wages required by federal law. This action also presents supplemental state law claims for breach of contract and for a violation of the Florida Private Whistleblower Act ("FWA"), Fla. Stat. § 448.102(3).

## Jurisdiction and Venue

2. This court has jurisdiction over the FLSA claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This court has supplemental jurisdiction over the claims for

breach of contract and for the FWA violation by virtue of 28 U.S.C. § 1367(a) because the state claims are so related to the federal claim that they form part of the same case or controversy. The Plaintiff's state law claims share many operative facts with her federal law claim and the parties are identical. Resolving both state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

3. All acts giving rise to this complaint occurred in Miami-Dade County, Florida. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391(b).

### Parties

4. The plaintiff Winde Farinacci ("Farinacci") is, and at all times relevant to this Complaint was, an adult resident of Florida.

5. The defendant Diaz Fontanez & Associates ("DFA") is a limited liability company organized and doing business pursuant to the laws of Puerto Rico with a principal place of business in Guaynabo, Puerto Rico. DFA is authorized to conduct business in Florida and maintains an office in Miami-Dade County, Florida from which it does business as Open Gate Staffing ("OGS").

6. The defendant Ariel Diaz ("Diaz") is the sole manager of Diaz Fontanez & Associates LLC. Diaz has a significant ownership interest in DFA and exercises day-to-day control of the operations of DFA and OGS.

7. The defendant Andria Fontanez ("Fontanez") is the co-owner of Diaz Fontanez & Associates LLC. Fontanez has a significant ownership interest in DFA and exercises day-to-day control of the operations of DFA and OGS.

## General Allegations

8. OGS is a Florida-based agency specializing in the recruitment of Hispanic employees for companies facing labor shortages. OGS is a wholly owned division of DFA and does not exist as a separate legal entity.

9. In approximately April 2020, the Defendants agreed with Farinacci that Farinacci would work for DFA by performing services for OGS.

10. The Defendants purported to hire Farinacci as an independent contractor with an initial hourly rate of $20 plus a commission based on new revenues that she generated.

11. Diaz told Farinacci that it would be "easier" to have her working as an independent contractor rather than an employee.

12. Farinacci's initial job duties included contacting potential clients of OGS, persuading those clients to enter into a business relationship with OGS, explaining the placement fees charged by OGS, and placing recruited employees with clients of OGS. Within three months, her duties expanded to include complete responsibility for sales, business operations, staff training, and managing the accounts of OGS's clients.

13. In November 2020, Diaz advised Farinacci that she was being promoted to the position of Vice President/Director of Operations of OGS.

14. Farinacci and DFA entered into a written agreement, dated January 11, 2021, that purports to employ Farinacci as an independent contractor at an hourly rate of $22. The agreement describes services to be provided by Farinacci to DFA that include, among others, "overseeing daily business operations," "hiring staff," "evaluating performance and productivity," "analyzing accounting and financial data," and "other duties as assigned." A

copy of the agreement is attached as Exhibit A. The contract was drafted by the Defendants and signed by Diaz.

15. Additional compensation promised to Farinacci in the agreement attached as Exhibit A included 10% of the profits earned by OGS and reimbursement of travel and other business expenses.

16. Farinacci continued to perform the duties described above in paragraph 12 after entering into the agreement to perform the additional duties described above in paragraph 14.

17. Farinacci's job duties as described above were an integral part of the business operated by OGS. They were core functions of the business and the business could not have functioned without the performance of those duties.

18. Farinacci's job duties and performance were at all times directed and controlled by Diaz and Fontanez.

19. At no time relevant to this complaint did Farinacci operate an independent business with clients other than DFA and OGS. Farinacci's sole source of income after she began working for OGS until the termination of that relationship came from DFA and OGS. As a matter of economic reality, Farinacci was dependent upon DFA and OGS for her income.

20. Farinacci was employed by the Defendants but was deliberately misclassified as an independent contractor for the financial benefit of the Defendants.

21. Farinacci often worked 14 to 16 hours per day for 6 or 7 days per week in the performance of job duties for OGS and DFA.

22. Regardless of the number of hours per week that Farinacci worked for OGS and DFA, she was paid the same "straight time" hourly wage for all hours she worked. She was never paid a premium overtime wage for hours worked in excess of 40 during a workweek.

23. As one example of the defendants' failure to pay overtime wages, Farinacci worked 47.3 hours during the workweek that included December 14-18, 2020. Farinacci was paid the same "straight time" hourly rate for all 47.3 hours and was not paid the premium overtime rate required by 29 U.S.C. § 207 for the 7.3 hours she worked in excess of 40 during that workweek.

24. In or about March 2021, Diaz instructed Farinacci to help him terminate an employee who had been hired pursuant to a grant program administered by a government agency in Puerto Rico. DFA received grant money to pay wages to the employee. The terms of the grant program required DFA to reimburse a percentage of the employee's wages to the government agency if DFA did not continue to employ the employee after the grant period ended unless DFA discharged the employee for cause. Diaz instructed Farinacci to fabricate a pretextual reason to terminate the employee under circumstances that would not require DFA to reimburse the government agency for the employee's wages.

25. Farinacci objected to and refused Diaz's instruction to defraud the government as compliance would have involved Farinacci, OGS and DFA in criminal activity.

26. On or about March 26, 2021, DFA terminated Farinacci's employment because she refused to take an unlawful action as instructed by Diaz.

27. In breach of the agreement attached as Exhibit A, DFA initially advised Farinacci that she would receive 30 days' notice of her termination but immediately cut off all communication with Farinacci after March 26, 2021, gave her no opportunity to continue working, and did not pay her for the 30 days that followed March 26, 2021. Had that breach not occurred, Farinacci would have continued her employment for another 30 days and would have earned at least $3,680.00 in hourly wages (calculated as 20 working days of at least 8 hours at $22 per hour). Farinacci has demanded payment of those wages by DFA but payment has not been made.

28. At the time of her termination, Farinacci was owed approximately $21,000 as her share of first quarter profits pursuant to her compensation agreement. Farinacci has demanded payment of the unpaid compensation by DFA but payment has not been made.

### First Claim: FLSA Violation
### (Against all Defendants)

29. Farinacci realleges and incorporates paragraphs 1 to 28 of this Complaint.

30. OGS serves clients in multiple states across the United States. At all times relevant to this complaint, DFA was an enterprise engaged in commerce or in an industry affecting commerce and was an employer as defined by 29 U.S.C. § 203, which had employees engaged in commerce in Puerto Rico, Florida, and other states, including Farinacci.

31. DFA is an enterprise whose annual gross volume of sales made or business done was not less than $500,000 during calendar years 2020 and 2021, among other years.

32. Diaz and Fontanez were responsible for the hiring, supervision, and discharge of Farinacci. Diaz and Fontanez determined the conditions of Farinacci's employment and the rate and manner of her payment, controlled Farinacci's work, maintained Farinacci's

employment records, and made the decision to misclassify Farinacci as an independent contractor.

33. At all times relevant to this complaint, the Defendants were joint employers of Farinacci but misclassified her as an independent contractor to avoid paying overtime wages required by the FLSA.

34. Throughout the course of her employment, Farinacci regularly worked more than 40 hours in a workweek but was not paid one-and-one-half times her regular rate for the hours he worked in excess of 40, in violation of 29 U.S.C. § 207.

35. The Defendants willfully, intentionally, and with reckless disregard for the statutory rights of Farinacci violated 29 U.S.C. § 207 by failing to pay Farinacci the premium overtime wages she earned for all hours worked in excess of 40 during each workweek.

36. Pursuant to 29 U.S.C. § 216(b), Farinacci is entitled to recover her unpaid overtime wages and an additional equal amount as liquidated damages, in amounts to be proven at trial, as well as reasonable attorney's fees and costs.

### Second Claim: Breaches of Contract
### (Against DFA)

37. Farinacci realleges and incorporates paragraphs 1 to 28 of this Complaint.

38. The agreement attached as Exhibit A was offered by DFA and accepted by Farinacci. The terms stated in the agreement attached as Exhibit A are the binding contractual terms and conditions of Farinacci's employment by DFA except as those terms are inconsistent with the requirements of the FLSA.

39. DFA breached the terms of Farinacci's employment agreement by failing to give her 30 days' notice of the termination of her contract.

40. The breach described in the preceding paragraph was a direct, proximate, and substantial cause of lost wages that Farinacci would have earned in the absence of the breach in the approximate amount of $3,680.00.

41. DFA breached the terms of Farinacci's employment agreement by failing to pay her share of first quarter profits.

42. The breach described in the preceding paragraph was a direct, proximate, and substantial cause of lost compensation to which Farinacci is entitled in the approximate amount of $21,000.

### Third Claim: Florida Private Whistleblower Act Violation
### (Against DFA)

43. Farinacci realleges and incorporates paragraphs 1 to 28 of this Complaint.

44. At all times relevant to this Complaint, Farinacci was employed by DFA.

45. In March 2021, Farinacci engaged in activity protected by Fla. Stat. § 448.102(3) by objecting to DFA's directive to participate in defrauding a government agency. The fraudulent scheme to which Farinacci objected involved the use of communications facilities in interstate or foreign commerce to transmit false representations to a government agency for the purpose of executing a fraudulent scheme to retain government funds that DFA was required to reimburse to a government agency.

46. The directive to which Farinacci objected was in violation of laws, rules, or regulations, including but not limited to the criminal prohibitions against: theft by fraud, Fla. Stat. § 812.014; obtaining property by false pretenses, Fla. Stat. § 812.155; wire fraud, 18 U.S.C. § 1343; and the False Claims to Government of Puerto Rico Programs, Contracts, and Services Act, Act No.154-2018.

47. DFA took an adverse employment action against Farinacci by terminating her employment on or about March 26, 2021.

48. DFA took the above-described adverse employment action because Farinacci engaged in the protected activity described above.

49. DFA's retaliation against Farinacci for engaging in protected activity violated Fla. Stat. § 448.102(3).

50. As a direct, substantial, and proximate result of the retaliatory conduct described above, Farinacci has suffered and will continue to suffer lost wages and benefits of employment, emotional distress, mental anguish, humiliation, anxiety, loss of dignity, and loss of enjoyment of life.

## Demand for Relief

Plaintiff, Winde Farinacci, demands judgment against Defendants Diaz Fontanez & Associates, LLC, Ariel Diaz, and Andria Fontanez as follows:

a. As to the first claim, judgment against all defendants, jointly and severally, for an award of Plaintiff's unpaid overtime wages and an additional equal amount as liquidated damages, in amounts to be proven at trial, in addition to reasonable attorney's fees, expenses, and costs pursuant to 29 U.S.C. § 216(b).

b. As to the second claim, an award for unpaid compensation in amounts to be proved at trial in addition to reasonable attorney's fees, expenses, and costs pursuant to Fla. Stat. § 448.08.

c. As to the third claim, an award of lost wages and compensatory damages in an amount to be determined by the jury, an equitable order reinstating Plaintiff to her position with full seniority and wage adjustments that would have been implemented in the

absence of Defendant's unlawful conduct or an equitable award of front pay in lieu of reinstatement, and an award of costs, expenses, and attorney's fees pursuant to Fla. Stat. § 448.104.

      d.      For such further relief as is just.

      e.      For the costs of this action.

### Jury Demand

Plaintiff demands a trial by jury.

Dated: July 6, 2021
Plantation, Florida

Respectfully submitted,

*/s/ Robert S. Norell*
Robert S. Norell, Esq. (Fla. Bar No. 996777)
E-Mail: rob@floridawagelaw.com
**ROBERT S. NORELL, P.A.**
300 NW 70th Avenue
Suite 305
Plantation, Florida 33317
Telephone: (954) 617-6017
Facsimile: (954) 617-6018
*Counsel for Plaintiff*